IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VASILIKI GERONDIDAKIS, DUANE GRACE;
BRENDA MCKEE AND MELISSA BEGLEY;
Individually, and on behalf of All Other Similarly
Situated Who Consent to Their Inclusion in a
Collective Action ;

        Plaintiffs,

   vs.

BL RESTAURANT OPERATIONS, LLC.;
BL RESTAURANTS HOLDING, LLC; BL         Case No.: 8:12-cv-00096-EAK-MAP
RESTAURANTS GROUP HOLDING
CORP.; RESTAURANTS-AMERICA
CONSULTING GROUP, INC.;
701 AMERICA INC. (f/k/a BAR LOUIE
AMERICA, INC.); 706 DEVELOPMENT,
INC. (f/k/a BAR LOUIE DEVELOPMENT,
INC.); and CONCEPTS AMERICA, INC.;

       Defendants,

_____/

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW TO CONDITIONALLY
CERTIFY COLLECTIVE ACTION AND MOTION FOR
EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS**

**For the Plaintiffs:**

*Benjamin L. Williams*
Feldman Fox & Morgado PA
501 North Reo Street
Tampa FL 33609
(t) 855-433-6529
(p) 813-639-9366
(f) 813-639-9376
Email: bwilliams@ffmlawgroup.com

## TABLE OF CONTENTS

**MOTION FOR AN ORDER PERMITTING COURT SUPERVISED NOTICE TO EMPLOYEES OF THEIR OPT-IN RIGHTS** ........................................................................................................ 2

**MEMORANDUM OF LAW** .......................................................................................... 7
  I.   INTRODUCTION ........................................................................................................ 7
  II.  APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS ........................... 10
      *A.  Authority to Send Class Notice* ............................................................... 10
      *B.  The Eleventh Circuit Uses a Two-Tiered Approach* ................................ 11
  III.  Courts Focus on a Common Scheme or Plan and do not Require Many Opt-ins to Have Already Joined When Determining Whether to Grant Notice .................... 12
      *A.  Common Scheme or Plan* .......................................................................... 12
      *B.  Number of Opt-In Plaintiffs Required* ...................................................... 12
  IV.  FACTORS IRRELEVANT TO THE COURT'S CONSIDERATION ................... 14
      *A.  The "Merits" of Plaintiffs' Claim are not Considered When Determining Whether to Grant Notice.* ................................................................................. 14
  V.  PLAINTIFFS' NOTICE IS ACCURATE AND SHOULD BE POSTED AT ALL OF DEFENDANTS' LOCATIONS NATIONWIDE. ................................................ 18
  VI.  LIMITED DISCOVERY OF NAMES AND ADDRESSES OF THE PUTATIVE CLASS IS NECESSARY TO CARRY OUT NOTICE. ....................................... 19
  VII.  PROPOSED NOTICE ......................................................................................... 20
  VIII.  THE APPLICABLE STATUTE OF LIMITATIONS SHOULD BE THREE YEARS, EQUITABLY TOLLED TO THE DATE OF THE INITIAL COMPLAINT. ................................... 21
      *A.  Three Year Statute of Limitations is Applicable at the Notice Stage.* ...... 21
      *B.  Defendants' Failure to Disclose Additional Defendants Warrants Equitable Tolling.* ................ 22
  IX.  CONCLUSION AND RELIEF REQUESTED ...................................................... 24

## EXHIBIT LIST

A. Declaration of Melissa Begley;
B. Declaration of Brenda McKee;
C. Declaration of Duane Grace;
D. www.Stores.org Article,
E. Excerpts from http://www.suncappart.com
F. Plaintiffs Composite Information;
G. Declaration of Sarah Landrum;
H. Declaration of Sarah Flores;
I. Declaration of Brenda Ledig;
J. Declaration of Melony Fedorowicz (Waters);

K. Declaration of Kristin Grimes
L. Declaration of Mollie Brislin;
M. Declaration of Nicholas Sawyer;
N. Declaration of Carol Nogueira;
O. Declaration of Amanda Buckely;
P. Declaration of William Ibister;
Q. Plaintiffs' Proposed Notice
R. Plaintiffs' Proposed Opt-In Form.

Plaintiff, VASILIKI GERONDIDAKIS ("GERONDIDAKIS"); DUANE GRACE ("GRACE"); BRENDA MCKEE ("MCKEE"; AND MELISSA BEGLEY[1] ("Begley" or together with all other Plaintiffs and Opt-In Plaintiffs "PLAINTIFFS"), by and through the undersigned counsel and pursuant to Local Rule 3.01(g), request the entry of an Order for conditional certification of this collective action on behalf of the classes of  "servers" and "bartenders"; and permitting Court supervised notice to all similarly situated employees who were employed by Defendants BL RESTAURANT OPERATIONS, LLC."(BLRO"); BL RESTAURANTS HOLDING, LLC. ("BLR HOLDING"); BL RESTAURANTS GROUP HOLDING CORP. ("BLR GROUP"); RESTAURANTS-AMERICA CONSULTING GROUP, INC. ("RESTAURANTS-AMERICA"); 701 AMERICA INC. (f/k/a BAR LOUIE AMERICA, INC.) ("701 INC"); 706 DEVELOPMENT, INC. (f/k/a BAR LOUIE DEVELOPMENT, INC.)("706 INC"); and/or CONCEPTS AMERICA, INC., ("CONCEPTS-AMERICA" or together with all other Defendants, "Defendants" or "BAR LOUIE") over the last three (3) years and who were subjected to Defendants' illegal pay practices.  As discussed in detail below, Plaintiffs request conditional certification of two national classes; the first class comprised of "bartenders" and the second class comprised of "servers". Plaintiffs further request an order equitably tolling the applicable statute of limitations in the instant matter and in support of the motion states as follows:

## MOTION FOR AN ORDER PERMITTING COURT SUPERVISED NOTICE TO EMPLOYEES OF THEIR OPT-IN RIGHTS

1. Section 16(b) of the Fair Labor Standards Act of 1938 ("FLSA") provides, among other things, that an action to recover unpaid minimum wages or unpaid overtime compensation may be maintained against any employer in any federal or state court of competent

---

[1] Ms. Begley recently was married and now goes by the name - Melissa (Begley) Hepworth.  For the purposes of this pleading Mrs. Hepworth shall be referred to as Ms. Begley.

jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. See 29 U.S.C. § 216(b).

2. As stated in Plaintiffs' First Amended Complaint (Dkt. 29), Plaintiffs were employed as bartenders and servers at BAR LOUIE restaurants. During their employment with BAR LOUIE, Plaintiffs were each paid an hourly rate of less than the applicable minimum wage in addition to tips received from customers.

3. Plaintiffs were required to participate in a tip pool wherein each server was required to give a percentage of their tips to the bar staff at the end of every shift (aka "Tip Outs").  In turn, bartenders were required to share Tip Outs and tips received directly from customers between all bartenders on duty for that shift.[2]

4. BAR LOUIE institutionalized a policy and practice requiring/allowing managers[3] ("Managers") to 'work' bartending shifts.[4]  At the end of the Managers' bartending shifts, Managers received a share of the bartenders' tip pool.[5] See Ex. A-Declaration of Melissa Begley ¶ 10; Ex. B-Declaration of Brenda McKee ¶ 8; Ex. C-Declaration of Duane Grace ¶ 7-8.

5. BAR LOUIE's "practice of forced sharing of tips with management is ... an illegal practice, regardless [of] whether or not the members of management were engaged in restaurant services that could be the subject of tipping." *Chung v. New Silver Palace Restaurant, Inc.,*

---

[2] This was generally accomplished via a pro-rata basis, based upon the number of shift hours each bartender worked.

[3] Managers include BAR LOUIE employees working under the following job titles or those employees who performed substantially the same job duties as:  General Manager, Bar Manager, Front of House Manager and Marketing Managers or the "manager on duty".

[4] *See* Ex. D - Stores.org Article, Erika Buesing, director of marketing states "restaurant mangers also tend bar, providing...a sense of guests visiting someone's home."

[5] To reduce and save payroll expenses, BAR LOUIE intentionally paid Managers a below-market salary and allowed/required Mangers to  work "bartending" shifts specifically so that Managers could participate in the tip pool and thereby reach a competitive compensation package.  In other words, BAR LOUIE required that Servers and Bartenders paid their Managers' salary via participation in the tip pool.

246 F.Supp.2d 220, 229 (S.D.N.Y. Sept.13, 2002) (noting that tip sharing with management "violates the statutory Condition that 'all tips' received by the [employees] be 'retained' by the [employees]"). "The FLSA expressly prohibits employers from participating in employee tip pools. "Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Chung v. New Silver Place Rest., Inc.,* 246 F.Supp.2d 220, 230 (S.D.N.Y.2002); *Wajcman v. Investment Corp. of Palm Beach,* No. 07-80912-CIV, 2008 WL 783741, *3 (S.D.Fla. March 20, 2008) ("The theory here is that employees who exercise substantial managerial authority over the day to day operations of the business are functionally the 'employers' themselves"). Where employers participate in a tip pool, the pool is invalid." *See Strange v. Wade,* WL 3522410 (S.D.Ohio 2010).

6.  BAR LOUIE violated the FLSA by requiring its servers to participate in an invalid tip pool, whereby servers and bartenders must contribute a portion of their tips to the Defendants' Managers who do not customarily and regularly receive tips. [6]

7.  Plaintiffs have brought this action on behalf of all current and former similarly situated bartenders and servers who worked at any BAR LOUIE restaurant location nation-wide[7], and who were required to participate in a tip pool with managers within the last three (3) years.

8.  Plaintiffs now seek to have this Court Conditionally Certify this matter as a collective action comprised of two (2) classes of employees/plaintiffs as follows:

---

[6] BAR LOUIE Managers, including but not limited to the General Managers, Bar Managers, Front of House Managers and the Marketing Managers were salaried employees who are scheduled to work 40 hours or more per week; make their own schedules; have the capacity to hire, fire, and schedule other employees; can adjust/manipulate hours for payroll; have the authority to release/clock out servers and bartenders at the end of shifts and oversee the distribution of the employees' tip pool.

[7] BAR LOUIE operates 47 locations nationwide – including Pittsburgh, Columbus, Foxborough, Washington DC, Tampa and Chicago.  As of June 2, 2010 there were 36 Restaurant Locations. *See* Ex. E - Sun Capital Partners Inc.'s Website, identifying BAR LOUIE's restaurant acquisition and numourocity .

a.   **Proposed Class of Servers ("Servers")** are those current or former BAR LOUIE employees who work(ed) as a server, waiter or waitress (or any other job title performing the essentially the same job functions as Servers), at any BAR LOUIE restaurant location nation-wide during the past three (3) years who were subject BAR LOUIE's unlawful tip pooling practices described above.  In support of the class of Servers, eight (8) current or former BAR LOUIE employees have joined this suit to recover damages incurred as a result of BAR LOUIE's improper tip pooling practices as they pertain to the class of Servers.  See Ex. F - Plaintiff Composite Information.  Plaintiffs' claims are typical of the claims of other former and current similarly situated Servers, and Plaintiffs suffered similar types of damages associated with BAR LOUIE's unlawful practice of management participation in the employee tip pool.

b.   **Proposed Class of "Bartenders"** are those current or former BAR LOUIE employees who work(ed) as a bartender, barkeep, barman, barkeeper, barmaid, mixologist or any other job title performing the essentially the same job functions as Bartenders, at any BAR LOUIE restaurant location nation-wide during the past three (3) years who were subject BAR LOUIE's unlawful tip pooling practices described above.  In support of the class of Bartenders, eighteen (18) current or former BAR LOUIE employees have joined this suit to recover damages incurred as a result of BAR LOUIE's improper tip pooling practices as they pertain to the class of Bartenders.  See Ex. F - Plaintiff Composite Information.  Plaintiffs' claims are typical of the claims of other former and current similarly situated Bartenders, and Plaintiffs suffered similar types of damages associated with BAR LOUIE's unlawful practice of management participation in the employee tip pool.

9. As a result of BAR LOUIE's unlawful tip pooling policies and practices, Servers and Bartenders did not receive full and proper payment of the applicable minimum wage required for every hour in which they worked for BAR LOUIE; and Servers and Bartenders were deprived of the tips they earned in violation of the FLSA's requirement under 29 U.S.C §203(m) mandating that tipped employees must retain all the tips they receive.

10. Accordingly, Plaintiffs and all other similarly situated Servers and Bartenders are owed the full and proper value of the applicable minimum wages for every hour they worked for BAR LOUIE, plus restitution of all tips improperly shared with managers[8] in addition to the right to participate in this litigation.   BAR LOUIE has acted or refused to act on grounds applicable to Servers and Bartenders, thereby making the identical relief appropriate with respect to their current and former Servers and Bartenders as a whole. Moreover, the common questions of law and fact predominate over any questions affecting only Plaintiffs, and a collective action is superior to other available methods for the fair and equitable adjudication of the controversies between the representatives described above and the named Defendants. And, although the classes of current and former Servers and Bartenders is identified and certain, the individual members of the class cannot be completely identified and notified of their right to join this action absent access to Defendant's books and records.

11. Plaintiffs were prevented from seeking Court supervised notice to Servers and Bartenders until now due[9] to BLRO's and BLR HOLDINGS' failure to disclose the prior ownership of the BAR LOUIE chain of restaurants. [10]

---

[8] *See Chung v. New Silver Palace Restaurant, Inc.*, 246 F.Supp.2d 220 (S.D.N.Y. 2002) and *Chan v. Sung Yue Tung Corp.*, 2007 WL 313483 (S.D.N.Y.).
[9] Defendants RESTAURANTS-AMERICA; 701 INC; 706 INC and CONCEPTS-AMERICA filed their first appearance in this matter on or about September 10, 2012.
[10] Pursuant to Fed. R. Civ. P. Rule 26 (a)(1)(A)(i) parties are required to disclose :the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with

12. Despite BLRO's and BLR HOLDINGS' reliance upon the fact that they did not employ plaintiffs until May 30, 2010 as an affirmative defense; [11]and the fact that BLRO was engaged in litigation with RESTAURANTS-AMERICA over the sale of BAR LOUIE[12] neither BLRO or BLR HOLDINGS disclosed the identity of RESTAURANTS-AMERICA; 701 INC; 706 INC or CONCEPTS-AMERICA.

13. Defendants should not benefit from hiding the names of essential Defendants in this matter, and the applicable statute of limitations should be equitably tolled to the date of the initial filing of the original complaint for all putative Servers and Bartenders who receive notice pursuant to this motion.

WHEREFORE, Plaintiffs, respectfully request that the Court permit and supervise notice to all current and former Servers and Bartenders who did not receive full and proper minimum wages and the full value of the tips they earned due to BAR LOUIE's improper tip pooling practices. Further Plaintiffs request this Court enter an Order equitably tolling the statute of limitations of the putative class members.

## MEMORANDUM OF LAW

### I.   INTRODUCTION

The FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated. See 29 U.S.C. § 216(b). The FLSA provides in part, that:

> An action to recover the liability [for unpaid overtime may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by anyone or more employees for and in behalf of himself or themselves and other similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party

---

the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."

[11] *See* Dkt. 6 - Defendants' Answer and Defenses to Plaintiff's Complaint

[12] *See* Dkt. 16 BLRO's Complaint Against RESTAURANTS-AMERICA et. al.

and such consent is filed in the court in which such action is brought. See id. (emphasis added).

Defendants, BAR LOUIE is a national restaurant chain with forty-seven (47) locations nationwide. BAR LOUIE serves food in the casual to upscale lunch and dining segment of the restaurant industry. BAR LOUIE portrays itself as a progressively hip neighborhood restaurant and bar with a lively atmosphere. As part of its services, BAR LOUIE employed and continues to employ several hundreds of Servers and Bartenders to serve their customer base. Plaintiffs and those similarly situated to them, who have opt-in to this suit, and wish to join this action are those Servers and Bartenders.

Plaintiffs Gerondidakis, Grace, McKee and Begley are current or former Servers at BAR LOUIE. Servers were tasked with "serving food and drinks to guests; cleaning the restaurant; performing opening and closing procedures; and guest services". Begley and other servers were paid a reduced minimum wage for 'tipped employees', but were subjected to BAR LOUIE's unlawful tip pooling practice of allowing managers to participate in the employee tip pool. *See* Ex. A - Declaration of Melissa Begley ¶ 6-10. Servers "[were] required to pay out a percentage of [their] tips to the bar area each shift. This was shared between the bartenders and the managers working behind the bar for that shift." Ex. H - Declaration of Sarah Flores ¶ 8. *See also* Ex. P – Declaration of William Ibister ¶ 8. "When managers worked a bartender shift, they continued to perform managerial duties such as but not limited to: check-outs for servers; void transactions; perform table visits; help out the front door; and scheduling and ordering in the back office." See Ex. H - Declaration of Sarah Landrum ¶ 8.

Plaintiffs Gerondidakis, Begley, McKee and Grace were or are employed as bartenders at BAR LOUIE. Bartenders were paid a reduced minimum wage. In the performance of their job, Bartenders were required to perform the following job duties, including but not limited to:

opening and closing duties; stock and clean the bar area; maintaining the bar; handling cash payments; customer service; mixing and serving drinks to guests; entertaining guests; interacting with guests; prepping fruit; and performing "side-work". Bartenders were required to share tips with Managers when Managers "worked a bartender shift".   While working their bartender shift, Managers continued to perform their managerial duties and failed to fully execute the job duties of a Bartender. Despite these performance shortcomings, Managers fully participated in the employee tip pool when they were scheduled for bartender shifts.  See Exhibits A through C and I through P.[13]

Plaintiffs assert that BAR LOUIE's above described policies and practices violate the FLSA's prohibition on employer/Managerial participation in employee tip pools and adversely affected the rights of each member of this collective action.  *Chung v. New Silver Place Rest., Inc.,* 246 F.Supp.2d 220, 230 (S.D.N.Y.2002); *Wajcman v. Investment Corp. of Palm Beach,* No. 07-80912-CIV, 2008 WL 783741, *3 (S.D.Fla. March 20, 2008) ("The theory here is that employees who exercise substantial managerial authority over the day to day operations of the business are functionally the 'employers' themselves"). Where employers participate in a tip pool, the pool is invalid*." See Strange v. Wade,* WL 3522410 (S.D.Ohio 2010).

Therefore, Plaintiffs seek this Court's authorization to facilitate notice to every Server and Bartender who was/is subject to the illegal tip pool practices described above within the last three (3) years.

---

[13] *See also* Ex. A - Declaration of Melissa Begley; Ex. B - Declaration of Brenda McKee; Ex. C - Declaration of Duane Grace; Ex. I - Declaration of Brenda Ledig; Ex. J - Declaration of Melony Fedorowicz; Ex. K - Declaration of Kristin Grimes; Ex. L - Declaration of Mollie Brislin; Ex. M - Declaration of Nicholas Sawyer; Ex. N - Declaration of Carol Nogueira; Ex. O - Declaration of Amanda Buckley and Ex. P - Declaration of William Ibister.

## II.    APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS

### A. Authority to Send Class Notice

FLSA class actions operate much differently than the typical class action suits under Rule 23 of the Federal Rules of Civil Procedure. Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging to a similarly situated class of plaintiffs must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case. Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See id.* This is the exact opposite of traditional Rule 23 class actions in which a plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out."

In *Hoffman-La Roche. Inc.* v. *Sealing,* 110 S. Ct. 482 (1989), the Court ruled that not only did trial courts have authority to compel defendant-employers to provide names and addresses of potential plaintiffs through the pretrial discovery process, but that this authority also included sending court-authorized consent forms to potential plaintiffs. *See id.* There, the Court addressed the issue of whether the district court may play any role on prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought. *See id.* The Court determined that district courts have discretion in appropriate cases to implement 29 U.S.C. §216(b), by facilitating notice to potential plaintiffs. See *id.* at 486. This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. See *id.*

The question of notification in a FLSA class action arose again in *Dybach* v. *State of Florida, Department of Corrections,* 942 F.2d 1562 (11th Cir. 1991), where the Eleventh Circuit found that an adult probation officer was non-exempt and therefore entitled to overtime compensation for all hours worked over forty (40) in multiple workweeks. *See id.* The Eleventh Circuit also held that the district court had authority to issue an order requiring notice to "similarly situated"

employees of the defendant affording them the opportunity to "opt-in." *Id.*

**B. The Eleventh Circuit Uses a Two-Tiered Approach**

The Eleventh Circuit utilizes a two-tiered approach to certification of an opt-in class pursuant to 29 U.S.C. § 2l6(b). *See Hipp* v. *Liberty Nat 'I Life Ins. Co.,* 252 F3d 1208, 1219 (11th Cir. 2001) (stating that the two-tiered approach "appears to be an effective tool for district courts in this circuit adopt it in future cases."). Under this two-tiered approach, the court makes an initial determination, based solely upon the pleadings and any affidavits, whether notice of the action should be given to potential class members. *See id.* at 1218. Because the court has minimal evidence at this stage of the proceedings, this determination is made using a *fairly lenient standard, and typically results in conditional certification of a representative class. See id.* (emphasis added). Thereafter, a second, more rigorous factual determination is made as to whether the potential opt-in plaintiffs are similarly situated. *See id.*

There are questions of law and fact common to BAR LOUIE's other Servers and Bartenders and the claims of the named Plaintiffs in the instant matter. Indeed, Plaintiffs' claims are typical of the claims of the other individuals in their positions. For purposes of defining the "similarly situated class" pursuant to 29 U.S.C. § 216(b), Plaintiffs need only demonstrate that the defined classes are comprised of representatives who are similarly situated to Plaintiffs with regard to Defendants' payroll practices and record keeping requirements. *See* 29 U.S.C. § 216(b); *Dybach* v. *State of Fla. Dept. of Corrections,* 942 F.2d 1562 (11th Cir. 1991). There is no requirement of "strict symmetry" or "absolute identity"; rather, potential class members must meet only a "sufficiently similar" standard. *Glass* v. *IDS Financial Services, Inc.,* 778 F. Supp. 1029, 1081 (D. Minn. 1991) (an allegation that a single decision, policy or plan precipitated the challenged action was sufficient to define the class). As indicated above and in the attached Declarations and exhibits, Plaintiffs have sufficiently satisfied the standard, if not, exceeded the standard.

### III. Courts Focus on a Common Scheme or Plan and do not Require Many Opt-ins to Have Already Joined When Determining Whether to Grant Notice

#### A. Common Scheme or Plan

In determining whether to grant notice of a collective action, Courts focus on whether Plaintiffs were victims of a common scheme or plan that violated the law. Plaintiff need not conclusively demonstrate that they and the other putative class members are, in fact, similarly situated. Rather, they must show that he "and potential plaintiffs together were victims of a common policy or plan that violated the law." *Rubery* v. *Buthna-Bodhaige, Inc.,* 569 F. Supp. 2d 334 (W.D.N.Y. 2008) *citing Ayers* v. *SGS Control Servs., Inc.,* 2004 WL 2978296, at *1, 2004 U.S. Dist. LEXIS 25646 at *4 (S.D.N.Y.2004). *See also Scholtisek,* 229 F.R.D. 381, at 390 ("[w]hat is important is that these employees were allegedly subject to a common practice or scheme on [their employer's] part"). Moreover, "it would be inappropriate ... to require plaintiff to meet a more stringent standard than that typically applied at the early stages of litigation" before discovery is complete. *Chowdhury* v. *Duane Reade, Inc.,* 2007 WL 2873929, at *3, 2007

U.S. Dist. LEXIS 73853 at *10-*11 (S.D.N.Y.2007), *citing Prizmic v. Armour, Inc., 2006 WL 1662614,2006 U.S. Dist. LEXIS 42627 (E.D.N.Y.2006)* ("[o]nly after discovery has been completed should the Court engage in a second more heightened stage of scrutiny").

In this case, Plaintiffs have presented substantiated allegations and documentation that they were victims of BAR LOUIE's common scheme or plan to operate an invalid tip pool. Plaintiffs have submitted affidavits/declarations substantiating that they were similarly situated and that all Servers and Bartenders were required to participate in the invalid and unlawful tip pool.

#### B. Number of Opt-In Plaintiffs Required

In determining whether to grant a Motion for Class Notice, typically Courts do not require a high number of Opt-in Plaintiffs to have already joined the case. *See Ackley* v. *City of Fort*

*Lauderdale,* Case No.: 0-:07-cv-60960, at Doc. 45(S.D.Fla. Jan., 24, 2008)(Granting Motion for Class Notice with Plaintiff and two (2) Opt-in Plaintiffs); *See e.g., Dietrich* v. *Liberty Square,* 230 F.R.D. 574, 579 (N.D. Iowa 2005)(two (2) affidavits provide sufficient factual basis for similarly situated inquiry); *See also Beck* v. *Desoto Health and Rehab,* case No.: 2:06-CV-226-FTM-34DNF, at Docs. 23, 34 (M.D. Fla. Jan. 24, 2007)(Granting Class Notice Motion with only one (1) opt-in); *See also Titre* v. *Platinum Partners, LLC et al* Case Number: 0:OS-cv-61254 at Doc. 42 (S.D. Fla. Oct. 16, 200S)(Granting Class Notice with eleven (11) Opt-ins); *Larry Guerra* v. *Big Johnson Concrete Pumping, Inc.,* CASE NO.: 05-14237 (S.D. Fla. May 17, 2006)(Granting Class Notice Motion where there was only one (1) Opt-in Plaintiff); *Davis* v. *Precise Communications, Inc.,* 2009 WL 812276 (N.D.Ga. March 27, 2009)(Granting Class Notice Motion with only three (3) opt-in Plaintiffs).

As delineated in Exhibit F – Plaintiff Composite Information, twenty-two (22) current or former BAR LOUIE employees from seven (7) various restaurant locations in five (5) different states have elected to joinder of their claims in this matter.  Based upon FLSA jurisprudence, Plaintiffs have shown that others are willing to participate if the case is certified. In addition, Plaintiffs have shown that the number of putative Opt-in Plaintiffs is large enough to justify certification. Indeed, BAR LOUIE employs many hundreds of Servers and Bartenders nationwide. It has forty-seven (47) locations throughout the country, and given the high employee turnover rate in the restaurant industry, over the past three years, this equates to potentially thousands of Servers and Bartenders  who have been adversely affected by BAR LOUIE's unlawful tip pooling practice during the applicable time period.

In support of this motion, Plaintiffs have submitted twelve (12) declarations of Servers and Bartenders along with additional documentation regarding BAR LOUIE's unlawful tip pooling

practices that support the allegations of the Complaint. Based upon a review of the declarations, the documents and the opt-in consents, specific facts based on personal observation have been provided to support their belief that other employees are interested in opting in. *See Grayson* v. *KMart Corp.,* 79 F.3d 1086, 1097 (11th Cir. 1996). In addition, allowing class notification to a potential class as large as thousands of employees will definitely avoid multiple lawsuits where numerous employees have allegedly been harmed by the same violation. *See Prickett* v. *Dekalb County,* 349 F.3d 1294, 1297 (11th Cir. 2003). Also, these Affidavit/Declarations demonstrate by specific knowledge that other similarly situated employees will continue to join this case following this motion.

Based upon the Complaint allegations and the above-referenced Declarations, Plaintiffs have satisfied the applicable burden of persuasion and there can be no doubt that a colorable basis exists for determining that others similarly situated to Plaintiffs exist.

Here, a collective action (as they are termed under the FLSA) is sought on behalf of Servers and Bartenders as the Defendants have acted or refused to act on grounds generally applicable to the classes (forcing Servers and Bartenders to participate in an illegal tip pool)  thereby making appropriate the same relief with respect to the class as a whole. Additionally, questions of law or fact common to all Servers and Bartenders who worked for Defendants predominate over any questions affecting only individual members. Thus, a collective action is superior to other available methods for the fair and efficient adjudication of this controversy.

## IV.    FACTORS IRRELEVANT TO THE COURT'S CONSIDERATION

### A.  The "Merits" of Plaintiffs' Claim are not Considered When Determining Whether to Grant Notice.

Plaintiffs anticipate Defendants will argue that BAR LOUIE Managers did not work bartender shifts or that Managers did not participate in tip pools. Although Plaintiffs believe

these defenses will ultimately fail based upon the facts elucidated by Plaintiffs' declarations and facts that will emerge during discovery, such arguments regarding the factual nature of Plaintiffs' claims and BAR LOUIE's defenses thereto are *irrelevant* at this stage of the notification process. At this "conditional certification" stage, courts *do not weigh the merits* of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated." *See Kreher* v. *City of Atlanta,* 2006 WL 739572, at *4 (N.D. Ga. Mar. 20, *2006) (citing Young* v. *Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of [the conditional certification] inquiry is not whether there has been an actual violation of law, but rather on whether the proposed plaintiffs are "similarly situated under 29 U.S.C. §216(b) with respect to their allegations that the law has been violated) and *Gjurovich* v. *Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 91,96 (S.D.N.Y. 2003) ("Once the Plaintiff makes a colorable claim for relief, the *only* inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff...").

In *Kreher,* the court concluded that too high a burden would be placed on the plaintiffs at the preliminary notice stage if they were required to submit evidence of a highly particularized nature, as the defendant suggested. *See id.* at 2006 WL 7398272, at * 4. As such, the *Kreher* court concluded that although the plaintiffs' declarations lacked some details, they established the existence of other employees employed in similar positions and subject to similar policies, warranting the court's decision to grant the plaintiffs' motion under the "fairly lenient standard" applied in the Eleventh Circuit. *Id.* at *4; *see also Leuthold* v. *Destination America,* 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("Defendants' arguments in their opposition brief focus on the more stringent second tier analysis and raise issues that may be more appropriately addressed on a motion for decertification after notice is given to the proposed class."); *Mooney,* 54 F.3d at 1214

(Recognizing that at the second stage of the *Lusardi* approach, or the opt-in or merits stage, with more information, the court can then make a factual determination on the similarly situated question, and decide whether to allow the representative action to proceed to trial or to decertify the class and dismiss, without prejudice, the opt-in plaintiffs); *Goldman* v. *Radioshack Corp.,* No. Civ.A. 2:03-CV-032, 2003 WL 21250571, at *8 (E.D.Pa. Apr. 16,2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant."); *Felix De Asencio* v. *Tyson Foods, Inc.,130* F.Supp.2d 660, 663 (E.D. Pa. 2001) ("While this information [submitted by Defendant] may play a more significant role after discovery and during an analysis of the second and final similarly situated tier, Plaintiffs have advanced sufficient evidence to meet their low burden at this first tier of the similarly situated question."). Thus, setting Defendant's anticipated factual/legal arguments aside for purposes of Plaintiff's Stage I Motion, Plaintiffs clearly have met his burden of proof on the "similarly situated" prong under *Hipp.*

**B. Courts do not Consider the Need for Discovery During Stage I**

It has been consistently recognized that discovery at the first notice stage is unnecessary for the similarly situated determination. *See Grayson,* 79 F.3d at 1099 (holding that a district court *may,* but it's not required to hold an evidentiary hearing prior to making its section 216(b) decision particularly where the Defendant's rights are not substantially affected) (emphasis added); *Lloredo* v. *Radioshack Corp.,* 2005 WL 1156030, at *1 (S.D. Fla. May 12,2005) (refusing to examine discovery in making its first stage similarly situated determination); *see also Harrison* v. *Enterprise Rent-A-Car Co.,* 1998 U.S. Dis!. LEXIS 13131, at *13 (July 1, 1998) (holding that the fact that subsequent discovery may prove the original plaintiffs and the opt-in plaintiffs are not after all "similarly situated" does not defeat conditional class

certification); *Schwed* v. *Gen. Elec, Co"* 159 F,R,D 373, 375 (N,D.N.Y. 1995) ("Even where later discovery proves the putative class members to be dissimilarly situated, notice ... prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA ]"),

An examination of discovery is not appropriate because at this stage the Court is not making a *factual determination* regarding whether the putative class members are "similarly situated." *See Pendelbury,* at *3 (stating that a factual determination of the similarly situated question is not appropriate at this time because of the early stages of the litigation); *Brown* v. *Money Tree Mortgage, Inc"* 222 F,R,D. 676, 682 (D, Kan, 2004) ("[T]he court will examine the individual plaintiffs' disparate factual and employment setting, as well as various defenses available to the defendant which appear to be individual to each plaintiff, during the 'second stage' analysis after the close of discovery,"); *Goldman* v, *Radioshack Corp.,* 2003 WL 21250571, at *8 (E,D. Pa. Apr. 16,2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant. ").

Moreover, discovery is not necessary because courts at this stage do not resolve factual disputes or make credibility determinations. *See Scott* v, *Heartland Home Finance,* 2006 WL 1209813, at *3 (N. D. Ga. May 3, 2006) *(citing Severtson* v, *Phillips Beverage Co.,* 141 F.R.D 276, 279 (D, Minn. 1992»; *Camper* v. *Home Quality Mgmt., Inc.,* 200 F.R.D. 516, 520 (D, Md. 2000) ("Factual disputes do not negate the appropriateness of court facilitated notice,"). In *Scott,* the court held that it was not appropriate for the court to address the merits of plaintiffs' claims or weigh evidence and thus refused to consider the Defendant's arguments regarding the variation in specific job duties, locations, working hours, or the availability of various exemptions. 2006 WL 1209813, at *3; *(citing Pendelbury,* 2005 WL 82500, at *3 (factual matters regarding the applicability of exemptions to employees not appropriate at notice stage); *Moss* v. *Crawford &*

17

*Co.,* 201 F.R.D. 398,410 (W.D. Pa. 2000) ("[V]ariations in the plaintiffs' duties, job locations and hourly billing rates do not differentiate the collective class to the extent that it defeats the primary objectives of a section 216(b) action.").

Through the allegations in the Complaint, the Affidavit/Declarations submitted to this Court, and documentary evidence, Plaintiffs have provided sufficient evidence to warrant notice of this lawsuit be sent to all other Servers and Bartenders throughout the United States. Because the "similarly situated" determination at the notice stage is preliminary, Defendant will not be prejudiced by the facilitation of notice because they can later argue that Plaintiff and the putative class members are not in fact "similarly situated" enough to proceed collectively to trial. Accordingly, Plaintiffs' Stage I Motion should be granted at this time.

## V.  PLAINTIFFS' NOTICE IS ACCURATE AND SHOULD BE POSTED AT ALL OF DEFENDANTS' LOCATIONS NATIONWIDE.

Plaintiffs proposed judicial notice is "timely, accurate, and informative." See Hoffmann-La Roche, 493 U.S. at 172. As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted. Plaintiffs also requests that, in addition to permitting Plaintiffs to notify the potential class members by mail, this notice be posted at each of Defendant's locations at which Servers and Bartenders are employed to further the broad remedial purpose of the FLSA. See Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 493 (E. D. Cal. Apr. 19,2006 )(finding that first class mail, combined with posting provided for the "best notice practicable" to the potential class); Veliz v. Cintas Corp., 2004 WL 2623909, at *2 (N.D. Cal. Nov. 12, 2004) (requiring employer to post notice and consent forms in all of its work sites); Johnson v. Am. Airlines, Inc., 531 F. Supp. 957,961 (N.D. Tex. 1982) (finding direct mail and posting on company bulletin boards reasonable).

Plaintiff proposes that the Court-supervised notification include all Servers and Bartenders from *any* BAR LOUIE restaurant location nationwide. Plaintiffs have demonstrated that there are many hundreds of similarly situated Servers and Bartenders that were subject to an invalid tip pooling policy and are willing to join Plaintiffs claims for unpaid minimum wages and restitution. In addition, twenty-two (22) Plaintiffs have already joined this case from five (5) different states in which BAR LOUIE operates.   (Florida, Massachusetts, Ohio, Pennsylvania and Missouri).

In light of the above evidence and allegations, the Plaintiffs have met the light burden of showing that the individuals are similarly situated in their job requirements and pay provisions in all BAR LOUIE locations.[14] In other words, the Plaintiffs have made more than the "modest factual showing" that the similarly situated requirement is satisfied.[15] As the Eleventh Circuit noted in *Hipp v. Liberty Nat'l Life Ins. Co*: at the notice stage, the district court makes a decision, "usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members." The Plaintiffs here have met this standard and pray this Court will permit them to inform others that this action exists and how it may affect their legal rights.

## VI.   LIMITED DISCOVERY OF NAMES AND ADDRESSES OF THE PUTATIVE CLASS IS NECESSARY TO CARRY OUT NOTICE.

The opt-in provision of the FLSA requires some procedure for identifying and notifying potential class members. Morden v. T-Mobile USA, Inc., 2006 WL 1727987, at *3 (W. D. Wash.

---

[14] *See Harrison v. Enterprise Rent-A-Car Co.,* 1998 U.S. Dist. LEXIS 13131 *5 (M.D. Fla. July 1, 1998) and *Tucker v. Labor Leasing, Inc.,* 872 F. Supp. 941, 947 (M.D. Fla. 1994). See also, *Goldman,* 2003 U.S. Dist. Lexis 7611 *27 (E.D. Pa. April 16, 2003) ("During this first-tier inquiry, we ask only whether the plaintiff and the proposed representative class members allegedly suffered from the same scheme.")

[15] See Dybach v. Florida Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

June 22, 2006)(compelling the defendant to produce the names and addresses of potentially similarly situated employees despite the fact that no conditional class certification motion was pending before the court). "The first step is to identify those employees who may be similarly situated and who may therefore ultimately seek to opt in to the action." Id. As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice. See Hoffmann-La Roche, 493 U.S. at 165; see also Dietrich v. Liberty Square, 230 F.RD. 574,581 (ND. Iowa 2005); Gieseke v. First Horizon Home Loan Corp., 408 F. Supp. 2d 1164,1169 (D. Kan. Jan. 10, 2006). Thus, if Plaintiffs' Motion is granted, the Defendant should likewise be ordered to provide Plaintiffs with a list of all putative Servers and Bartenders class members' name and addresses to carry out notice.

## VII.   PROPOSED NOTICE

The Notice proposed by Plaintiff *see* Exhibits P through S, are typical and have been approved many times in the Middle District. *See Simpkins* v. *Pulte Home Corp.,* 2008 WL 3927275 at p. 9 (M.D.Fla. 2008); *citing Cox* v. *Appliance Direct, Inc.,* 6:08-cv-216-ACC-DAB, docs 66 and 69; *Gutescu* v. *Carey Intern., Inc.,* 2003 WL 25586749 at p. 18 (S.D.Fla. 2003)(similar notice form issued).Also included in the notice is a basic statement of the law against retaliation by an employer if a putative plaintiff joins the case. *Id.* In addition, no statement regarding a potential Plaintiffs liability for costs should be included in the notice. *See Littlefield* v. *Dealer Warranty Services, LLC,* 2010 WL 173796 (E.D.Mo. Jan. 15, 2010)(denying Defendant's request that the notice inform potential plaintiffs of the possible costs they might incur by joining the lawsuit, because it might discourage plaintiffs from joining the litigation).

Plaintiff argues that that there is no plausible reason that Defense counsel should be listed on the notice form. What information can Defense counsel honestly and ethically provide to a putative class member with questions regarding the case? Plaintiff argues that there is no

possible utility that could be gained by identifying defense counsel. *Compare Ahle* v. *Veracity Research Co.,* 2009 WL 3103852 (D.Minn.)(The Court finds the decisions that have questioned any possible utility that could be gained by identifying defense counsel to be more soundly reasoned); *citing Cryer* v. *Intersolutions,Inc., No. 06-2032,2007 WL 1053214, at *304 (D.D.C. Apr. 7,2007)* ("The Court also sees no reason to include defense counsel on the class notice. Defense counsel does not play a role in managing the distribution of the notice or the gathering of consent forms. Including additional lawyers only creates the potential for confusion of those who receive the notice."), and *Morden v. T-Mobile USA, Inc.,* No. C05-2112RSM, 2006 WL 2620320, at *4 (W.D.Wash. Sept. 12,2006) (holding that the request to include defense counsel's contact information has" 'no basis in law or logic' ")

## VIII. THE APPLICABLE STATUTE OF LIMITATIONS SHOULD BE THREE YEARS, EQUITABLY TOLLED TO THE DATE OF THE INITIAL COMPLAINT.

### A. Three Year Statute of Limitations is Applicable at the Notice Stage.

The overwhelming majority of Courts use a three year statute of limitations period at the notice stage, because it is apparent that the issue of whether a willful or reckless violation has occurred (which will decide whether a two or three year statute of limitation period applies) will not likely be decided until at trial. See *Simpkins v. Pulte Home Corp.*, 2008 WL 3927275 at p. 9 (M.D.Fla. 2008)(the determination whether that standard is met in this case is fact determinative and will not be made at the conditional certification stage). In addition, Plaintiff has sufficiently alleged in its Complaint that a willful violation has occurred to warrant reference to the FLSA's three-year statute of limitations. *See Longcrier v. HL-A Co., Inc.,* 595 F.Supp.2d 1218, 1242 (S.D.Ala.2008) (approving the inclusion of a three- year statute of limitations in a court-facilitated notice when the plaintiffs adequately alleged willfulness); See also *Cryer v. Intersolutions, Inc.,* No. 06-2032, 2007 WL 1053214, at *3 (D.D.C. Apr. 7, 2007)(applying a

three-year statute of limitations for purposes of defining the initial class period in a court-facilitated notice when a plaintiff had sufficiently alleged willful conduct). Where Plaintiff has alleged a willful violation, however, "it is prudent to certify a broader class of plaintiffs that can be limited subsequently if appropriate, during the second phase of the collective certification process." *Anglada* v. *Linens 'NThings, Inc.,* No. 06-CV-12901, 2007 WL 1552511, at *8 (S.D.N.Y. May 29, 2007).

**B.  Defendants' Failure to Disclose Additional Defendants Warrants Equitable Tolling.**

Under the FLSA, the statute of limitations for each individual party plaintiff is not tolled until he or she files a written consent to join the action, or until the court issues an equitable tolling order. 29 U.S.C. § 256(b); *Partlow v. Jewish Orphans' Home, Inc.,* 645 F.2d 757, 760 (9th Cir. 1981), abrogated on other grounds by *Hoffman-La Roche, 495 U.S.* 165 (1989). I*n Hodgson v. Humphries,* the court recognized FLSA's statute of limitations as a "conventional procedural statute of limitations." 454 F.2d 1279, 1283-84 (10th Cir. 1972). As such, the limitations period need not be "exercised in strict conformity to the statute" *Ott v. Midland Ross,* 523 F.2d 1367, 1370 (6th Cir. 1975), and it is subject to the equitable doctrines of waiver, estoppel and tolling. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982). Equitable tolling is appropriate under circumstances where similarly-situated plaintiffs, though no fault of their own, have been unable to join the lawsuit. *See, Baldozier,* 375 F. Supp. 2d at 1092 (granting tolling to the date of the complaint where the defendant had refused to provide contact information for former employees); *Partlow,* 645 F.2d at 760 (granting equitable tolling where original consents found invalid because of improper attorney solicitations).

Here, Defendants BLRO and BLR HOLDING failed and refused to provide contact information for the prior owner(s) of the BAR LOUIE restaurant chain.  Due to the fact that Plaintiffs and the putative Server and Bartender class members worked a substantial time for the

prior owners (1.5 years) prior to the sale, the prior owners of the BAR LOUIE chain are and were indispensible parties to this action. Further, after the sale, the prior ownership entities changed their names and businesses so as to be unknowable by their former employees. [16] Conversely, Defendants BLRO and BLR HOLDING knew exactly who the prior ownership groups were/are; because BLRO continued to employ BAR LOUIE founders, Roger A. Greenfield and Theodore Kasemir, after the sale of BAR LOUIE.[17]

Thus any delay in filing Plaintiff's Motion for Leave to Amend Complaint (Dkt. 14, filed April 23, 2012) and subsequent delay in perfecting service upon RESTAURANTS-AMERICA; 701 INC; 706 INC and CONCEPTS-AMERICA[18] was directly caused by Defendants BLRO and BLR HOLDING's failure to disclose the identities of the prior ownership group, and subsequent objections to Plaintiff's Motion to Amend the Complaint.

During Defense Counsel's delay tactics, the statute of limitations continued and continues to run on similarly situated Servers and Bartenders who have not recieved notice of this claim, have no knowledge of their right to participate in this litigation and have been unable to join this lawsuit through no fault of their own. When balancing the equities, the filing of Plaintiffs' Complaint has put Defendants on notice of the putative class members' claims for minimum wage violations, an invalid tip pool. Under these circumstances, the equities weigh in favor of equitably tolling the claims of the putative class members who have been precluded from knowledge about their rights, this lawsuit or their ability to join this action from the date of Plaintiffs' Complaint (01/17/2012) through the period the Court sets for consents to be filed. *See*

---

[16] Bar Louie America Inc. became 701 America Inc., and Bar Louie Develop Inc. became 706 America Inc.

[17] Greenfield and Kasemir's continued employment with BLRO is presumptive proof that RESTAURANTS-AMERICA; 701 INC; 706 INC and CONCEPTS-AMERICA had actual or constructive knowledge of Plaintiff's complaint and the nature of this action.

[18] RESTAURANTS-AMERICA; 701 INC; 706 INC and CONCEPTS-AMERICA filed their first appearance in this matter on or about September 10, 2012.

*Daugherty et. al. v. Encana Oil & Gas (USA), Inc.,* Case 1:10-cv-02272-RBJ-KLM (USDC Colo. Dec. 20, 2011).

## IX.   CONCLUSION AND RELIEF REQUESTED

For the reasons more fully discussed above, the Plaintiffs ask this Court to: (1) recognize and certify this case as a collective action under §216(b) of the Fair Labor Standards Act and certify the classes of Servers and Bartenders; (2) Order that the statute of limitations is equitably tolled for all putative class members who receive Notice pursuant to this Court's Order; (3) Order that the Parties confer about the form and content of the notice that will be sent to potential opt-in plaintiffs (Plaintiffs' proposed sample is attached hereto as Exhibits Q, and R); that if the Parties can agree on a proposed notice Order that Notice may be sent out to the potential collective action members in this case; if the Parties cannot agree within five days of an Order Conditionally granting certification as to the form and content of the Notice, then each side may submit its proposed notice to the Court, and the Court will order which proposed notice to be sent to the potential collective action members with whatever changes, if any, the Court deems appropriate; (4) order Defendants to produce the names, address, phone numbers and personal email addresses of all potential collective action members of the Server and Bartender classes as those Classes are definition above in this Motion for BAR LOUIE restaurants owned and operated by Defendants during the applicable time period; and (4) appoint Vasiliki Gerondidakis, Amanda Buckley and Nicholas Sawyer the Class representatives of the Server and Bartender Classes to facilitate mediation and/or settlement, should one be reached, for all overtime claims that would then be submitted to the Court for approval.

Dated this 15th day of September 2012

Respectfully Submitted,

*/s/ Benjamin L. Williams*
Benjamin L. Williams
FL Bar No:  0030657
Feldman Fox & Morgado PA
501 North Reo Street
Tampa FL 33609
(t) 855-433-6529
(p) 813-639-9366
(f) 813-639-9376
Email: bwilliams@ffmlawgroup.com

Mitchell L. Feldman
FL Bar No:  0080349
Feldman Fox & Morgado PA
501 North Reo Street
Tampa, FL 33609
(t) 855-433-6529
(p) 813-639-9366
(f) 813-639-9376
Email:mfeldman@ffmlawgroup.com

Trial Counsel and Attorneys for the Representative
Plaintiffs, and the Putative Classes

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing Motion for Leave to File Amended Complaint and Incorporated Memorandum of Law was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Benjamin L. Williams*
Benjamin L. Williams, Esq.
Florida Bar No. 0030657