## DECLARATION OF FORT WORTH
## BARTENDER AND KEYHOLDER CLAIRE BEICH

I, Claire Beich, hereby submit this Declaration and state as follows:

1. I have personal knowledge of the facts set forth in this Declaration.

2. I have worked for BL Restaurant Operations, LLC ("BLRO") since this restaurant opened in December, 2011 in Fort Worth. I currently work as a Bartender or as a Keyholder in BLRO's Bar Louie restaurant in Fort Worth, Texas. When the bar opened I was a server lead trainer and that was an hourly job.

3. BLRO pays me an hourly rate $2.13 while I serve as bartender. I also receive tips directly from customers, as well as tip-out from the servers when I am a bartender. I work entire shifts designated as either bartender or as keyholder, my position does not overlap during a given shift. When I am in the keyholder position, which I started 2.5-3 months ago, I am paid an hourly wage that is higher than minimum wage, I receive $12.00, but I do not receive tip-out while working in the keyholder position. Keyholder is a leadership position and I am not permitted to receive tips while I work in that position.

4. When I work as keyholder, I work more opening shifts. When I work as bartender, I normally work about 20-37 hours per week and I work closing shift. It just depends on what the needs of the bar are. I may have exceeded 40 hours of work on one occasion in a given week, and I was paid overtime (time and a half) for that time.

5. When I bartend, I bring home tips which varies from week to week, but I think the worst week was approximately $300.00 in tips, and on average I earn $750.00 in tips on a full of week of bartending. The best week was approximately $900.00-1,000.00 in tips when I have bartended.

6. When I was hired in November 2011, I attended orientation and training and during that time I was informed that Bar Louie takes a tip credit, and that my hourly rate for serving would be the minimum rate for tipped employees (currently $2.13). I also receive the full minimum wage (currently $7.25) for any time I spent in orientation. When I was hired, I received a written notice of the tip credit and my pay rate, which I signed during my orientation. I also sign a tip adjustment sheet each night when I work as bartender, which states that I am splitting my tips with the other bartenders only. This restaurant also has an Employee Rights poster near the dish machine, which I pass every day numerous times when I work, which explains the minimum wage and tip credit. When I work as a keyholder, I help the managers to ensure that employees clock in and clock out properly.

7. I normally work 4-5 days per week and I worked over 40 hours in a given week on one occasion and I was paid overtime for it. I do know that if I work over 40 hours as a bartender, I along with my co-workers would be paid overtime pay at a rate of 1.5 times the full minimum wage, minus the tip credit.

8. I believe that all of my time records are accurate to date, and that I have been correctly paid for all the hours I have worked during my time at the restaurant. I know that if my time was recorded inaccurately, which it has never been, I would tell my manager and he/she would fix that immediately. I have never heard of any co-worker having an inaccurate timesheet print-out.

9. The current General Manager (GM) of the Fort Worth restaurant is Diana Mather. She has been here since December 2011 when this bar opened, as well as our other managers. The Fort Worth restaurant also has three other managers: Chris York (service manager), Terry Davis (bar manager), and Steve Garner (kitchen manager). We had a team that did my training

and orientation and we did break-out groups and they discussed the compensation policies at the training so that I was aware of the tip credit since the beginning of my employment.

10. When I work as a bartender, the servers give 2% of their total sales to me and the rest of the hourly bartenders. They turn in their tips in to the managers to distribute directly to the bartenders. This tip-out goes to the hourly bartenders only. I have never shared any part of my tips with any manager, and I have never seen the hourly bartenders share any part of their tips with any manager. The managers earn a salary. Although the managers help us out, they do not accept or receive tips and never have to my knowledge.

11. I do not typically take breaks, but if I did, I would stay signed into the Aloha system and would still be on the clock and be compensated for that time.

12. I was informed of the restaurant's tip-out/tip pooling practices at the very beginning of my employment at the restaurant during my orientation. My GM and managers frequently remind me and the other bartenders and servers with whom I work about BLRO's time reporting policies. Again, as keyholder, I also help remind our employees about the importance of clocking in and clocking out accurately. My managers have never instructed or permitted me, or other bartenders or servers, to work "off the clock." My managers keep track accurately of the hours that I along with my co-workers work and this is a high priority for my managers. I keep track of my hours weekly, and I have never found a discrepancy in my timekeeping. I do not work without reporting and being paid for my actual time worked (*i.e.*, "off the clock").

13. I understand that it is against company policy to work while I am not clocked in and the managers make a point of making sure I along with my co-workers are well aware of this policy. And, I do not know any other servers, bartenders, or other hourly employees who have

3

ever worked "off the clock" at this restaurant. I have never forgotten to clock in or out, but if I did, I would go directly to my manager to get it corrected. I am not aware of any of my co-workers having an inaccurate time-keeping.

14. I know that BLRO policy requires me to accurately record all of the time that I work each day and each week, including any overtime. We use the "Aloha" system to clock in and out. When I am ready to begin work, I clock in and out of Aloha with my employee number before and after the scheduled shift. At the end of my shift, when I am ready to leave, I sign out of Aloha. When I sign out, which is the last thing I do before I leave, the computer prints a "receipt" that shows me my total hours worked for that shift and all of the hours for that week, as well as my compensation. I review these receipts to confirm that my hours are correct. I have never seen any discrepancies, but I would alert my manager if I did see one. I generally leave the restaurant immediately after clocking out on Aloha. I typically do not stay at the restaurant after I clock out, but I know that if I did stay, I would be "off the clock" and I would not do any work for the restaurant. I would not perform any work for the bar at that time if I did stay off the clock. I have never been asked or required to stay in the restaurant after clocking out for any reason. I always receive correct pay for the time I have worked.

15. The other hourly bartenders and I participate in a tip pool. We add up all of the total tips and we divide by the number of bartenders and by the number of hours each bartender worked. All of the hourly bartenders on a shift place all of the tips they receive from customers in a bucket according to whether the bartenders work upstairs or downstairs, and all tip outs from the servers are placed in the same bucket so that the bartenders can split up those tips according to the number of hours each bartender has worked. This practice of having the tip pool ensures that all of the hourly bartenders give great service to the customers. We have to work together

and all give the best service possible so that we will earn more tips. I think the tip pool is fair, especially with the number of bartenders we have on a shift, this way makes the most sense.

16. I have never shared my tips with a manager during my entire employment at this restaurant. The restaurant managers do not in any way take part in the tip pool money – it belongs solely to us hourly bartenders, when I work as a bartender.

17. I am aware that a lawsuit was filed against BLRO and BL Restaurants Holding, LLC (Defendants), claiming that BLRO's bartenders and servers were not paid for all time worked, and were required to give some of their tips to Defendants' managers. I am also aware that I could join or attempt to join that case or bring my own case if I had or have a similar claim, but I do not believe I have any such claims.

18. I have not been coerced or threatened in any way to give the information in this Declaration, and I have given this information of my own free will. I understand that I do not have to give this information and that I may participate in the case if I would like to do so; that I may provide or refuse to provide a declaration or testimony; and that giving the information in this Declaration is not a condition of my employment with BLRO. I understand that there would be no negative consequences in my employment if I decided not to provide this Declaration, and there will be no positive consequences in my employment for deciding to provide this Declaration as well.

19. I was told and understand that whether I decided to participate in an interview with the company's attorney was completely voluntary, that my decision to participate or not participate in the interview would have no effect on my employment.

20. I am freely and voluntarily providing this Declaration. I was told and understood that I should review this Declaration carefully to be sure that it is completely accurate and true,

and I have been provided a full opportunity to carefully review this Declaration and I made any revisions as needed. I also was told and understood that I could make any changes to the Declaration that I felt were needed to make sure that it is completely accurate and true. I have done so.

Pursuant to 28 U.S.C. §1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 30th day of July, 2012, in Fort Worth, Texas.

_____
CLAIRE BEICH

6